IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE TEAMSTERS
CONFERENCE PENSION AND
RETIREMENT FUND, by its Trustees, John A.
Bulgaro, Michael S. Scalzo, Brian K. Hammond,
George E. Harrigan, Sammuel D. Pilger,
Daniel W. Schmidt and
Mark D. May

                *Plaintiffs*,

v.

J.H. WATTLES, INC., a New York corporation,

                *Defendant*.

Case No: **5:24-cv-21**

Judge: **Hon. Gary L. Sharpe**

Magistrate Judge: **Hon. Mitchell J. Katz**

## COMPLAINT

Plaintiffs, New York State Teamsters Conference Pension and Retirement Fund, and its Trustees, by and through its attorneys, Paravati, Karl, Green & DeBella, LLP, as and for a Complaint, allege as follows:

### JURISDICTION AND VENUE

1. This is an action for the collection of withdrawal liability, interest, and statutory damages incurred by an employer as a result of a withdrawal from a multiemployer pension plan. This action also seeks declaratory and injunctive relief. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001–1461.

2. This Court has jurisdiction over this action under 29 U.S.C. § 1451(c) and under 28

1

U.S.C. § 1331.

3. Venue lies in this Court under 29 U.S.C. § 1451(d) in that the New York State Teamsters Conference Pension and Retirement Fund ("Pension Fund") is administered at its principal place of business at 151 Northern Concourse, Syracuse, N.Y., 13212.

4. Venue also lies in this District pursuant to the forum selection clause contained in the parties' contractual agreement which designates the County of Onondaga, located in the Northern District of New York, as the appropriate forum for actions of this type.

**PARTIES**

5. The Pension Fund, as an employee benefit fund, was created and exists pursuant to an Agreement and Declaration of Trust entered into between participating employers and union locals affiliated with the International Brotherhood of Teamsters ("Teamsters") and is a "multiemployer plan" as defined in 29 U.S.C. §1002 (37)(A) ("Plan"). As a condition precedent to participating in the Pension Fund, local unions and employers must execute, among other things, a collective bargaining agreement and participation agreement requiring the employer to make contributions to said Plan.

6. At all times relevant hereto, the Pension Fund has had its offices at, and has been administered from, 151 Northern Concourse, Syracuse, New York.

7. John A. Bulgaro, Michael S. Scalzo, Sr., Daniel W. Schmidt, Brian K. Hammond, George E. Harrigan, Samuel D. Pilger and Mark D. May are the individual members of the Board of Trustees of the Pension Fund and are "fiduciaries" as defined in 29 U.S.C. §1002 (21).

8. The Pension Fund is managed by its Board of Trustees which is the "plan sponsor" as defined in 29 U.S.C. §1002(16)(B)(iii) and 29 U.S.C §1301(a)(10). The Pension Fund, by its

2

Board of Trustees, as said plan sponsor of an employee benefit and multiemployer pension plan, is established and regulated pursuant to the Labor Management Relations Act (hereinafter referred to as "LMRA"), 29 U.S.C. §§181 et. seq. and the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA"), 29 U.S.C. §§1001 et. seq.

9. Pursuant to 29 U.S.C. §§1132(a)(3) and 1451(a)(1), the Trustees are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability. The Pension Fund pays pension and retirement benefits to qualified participants in the Plan. The Pension Fund receives contributions from employers that operate or do business within the jurisdiction of Teamsters locals that participate in the Plan pursuant to collective bargaining agreements entered into by and between such employers and Teamsters locals and pursuant to participation agreements entered into among employers, Teamsters locals and the Pension Fund.

10. Upon information and belief, and at all times relevant hereto, the defendant, J.H. Wattles, Inc., ("Wattles"), is a domestic corporation with offices at 104 Niagara Frontier Food Terminal, Buffalo, N.Y. 14206 and is an "employer" as defined in 29 U.S.C. §1002(5) for purposes of determining and assessing withdrawal liability under ERISA.

## THE LAW

11. On September 26, 1980, Congress amended ERISA by enacting the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"'"), 29 U.S.C. §§1381 et. seq.

12. MPPAA imposes joint and several liability upon the participating employer and all members of its "controlled group" who completely withdraw from a multiemployer pension plan. This liability imposed by MPPAA is determined by the employer's proportionate share of the plan's unfunded vested liability. 29 U.S.C. §1381. Under MPPAA, an employer is

deemed to have completely withdrawn from a plan when the employer permanently ceases to have an obligation to contribute to the plan or when it permanently ceases all covered operations under the plan. 29 U.S.C. §§1381(a) and 1383 (a).

13. The plan sponsor is empowered by MPPAA to determine the withdrawn employer's liability, to notify the employer of the amount of the withdrawal liability, to provide a schedule of payments, to demand payment as scheduled and to collect the amount of the withdrawal liability from the employer. 29 U.S.C. §§1382, 1399(b)(1) & (c)(3).

14. After an employer has received notice of its withdrawal liability, said employer may, within ninety (90) days, request that the plan sponsor review any specific matters relating to the determination of its liability. 29 U.S.C. §1399(b)(2)(B). Subsequent to any such request, the plan sponsor must make a reasonable review of any matter raised by an employer and notify the employer of its decision and the basis therefor. 29 U.S.C. §1399(b)(2)(B).

15. Pursuant to 29 U.S.C. §1401(a)(1), any dispute between an employer and plan sponsor is resolvable only by arbitration which must be initiated within sixty (60) days of the earlier of either:

    a. the date the plan sponsor notifies an employer of its review under Section 1399(b)(2)(B), or

    b. 120 days after the employer requests a review under Section 1399(b)(2)(A).

16. If no arbitration proceeding has been initiated pursuant to 29 U.S.C. §1401(a), the employer withdrawal liability assessment demanded by the plan sponsor shall be due and owing pursuant to the schedule of payments which they establish. At that time, the plan sponsor is authorized to bring an action for collection. 29 U.S.C. §1401(b)(1).

17. Notwithstanding an employer's request for review or demand for arbitration, interim payments shall be payable in accordance with the plan sponsor's schedule, beginning no later than sixty (60) days after the date of the plan sponsor's demand. 29 U.S.C. §1399(c)(2).

18. If the employer "defaults," the plan sponsor may also bring an action for collection and require the immediate payment of the outstanding amount of the employer's withdrawal liability. 29 U.S.C. §1399(c)(5).

19. Pursuant to 29 U.S.C. §1399(c)(5)(A), a "default" means "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure".

20. Further, and pursuant to 29 U.S.C. §1399(c)(5)(B), a "default" also means "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability".

21. In any action for collection of withdrawal liability in the event of a "default", the plan sponsor shall also be awarded interest, an additional award of the greater of interest or liquidated damages, costs, attorneys' fees and any other legal or equitable relief which the Court deems appropriate. 29 U.S.C. §1132 (g)(2).

**CLAIM FOR RELIEF**

22. Plaintiffs hereby repeat, reaffirm and reallege the contents of Paragraphs "1" through "21" hereof with the same force and effect as if fully set forth herein.

23. As aforestated, and at all times relevant hereto, upon information and belief, Wattles was party to a collective bargaining agreement with a local union affiliated with the International Brotherhood of Teamsters which, by its terms, required Wattles to make contributions to the Pension Fund on behalf of its covered employees.

24. Upon information and belief, and at all times relevant hereto, Wattles was also party to a participation agreement with the Pension Fund which further required Wattles to make contributions to the Pension Fund on behalf of all eligible and appropriate employees.

25. As such, Wattles had "an obligation to contribute" to the Pension Fund as that term is defined in 29 U.S.C. §1392(a).

26. On or about December 1, 2017, Wattles permanently ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan thereby effecting a "complete withdrawal" from the Plan within the meaning of 29 U.S.C. §1383.

27. As a result of this complete withdrawal, the Pension Fund, as plan sponsor, assessed Wattles a withdrawal liability in the amount of $3,505,433.08 as determined under 29 U.S.C § 1381(b).

28. By letter dated December 29, 2017, the Pension Fund sent Wattles a notice and demand for payment that, by reason of the foregoing, it had been assessed a withdrawal liability in the amount of $3,505,433.08. Said notification further stated, in part, that Wattles could pay the assessed liability in a single lump sum or make interim monthly payments of $7,258.92 for 240 months, in accordance with the provided schedule of payments, until the full amount of the withdrawal liability was satisfied. Wattles elected to make interim payments.

29. On or about June 14, 2018, Wattles made a request for review of the Pension Fund's determination of the assessed withdrawal liability.

30. The Pension Fund conducted a reasonable review of the specific matters raised by Wattles in its request for review and notified Wattles of its determination by letter dated February 14, 2020.

31. On or about October 20, 2020, Wattles filed a demand for arbitration pursuant to 29 U.S.C. §1401(a) to challenge the withdrawal liability assessment in the matter captioned <u>J.H. Wattles, Inc. and New York State Teamsters Conference Pension and Retirement Fund</u>, Case No. 01-20-0015-3687 ("Arbitration"). The Arbitration is still pending.

32. During the Arbitration, Wattles provided, among other things, documents in discovery and made witnesses available for deposition, including the deposition of Mr. Robert Bradley Jacobs, the President of Wattles, on July 24, 2023.

33. In addition to discovery produced by Wattles in the arbitration, Mr. Jacobs provided sworn testimony during his deposition that, among other things, Wattles does not have the financial ability and wherewithal to fully pay the assessed withdrawal liability.

34. Moreover, on August 25, 2023, Wattles produced a revised valuation of a current asset, namely its 47.76% interest in, Niagara Frontier Food Terminal, Inc., alleging that its original $824,000 valuation of said interest was now reduced to $58,000.

35. Pursuant to the rules adopted by the Pension Fund in accordance with 29 U.S.C. §1399(c)(5)(B), and more specifically Section 6 E. 2 of the Pension Fund's Policies and Procedures of Contributing Employers, a "default" occurs as a result of, among other things, if:

> The Trustees, in their discretion, deem the Fund insecure as a result of any of the following events with respect to the Withdrawn Employer:
>
> (a) the Withdrawn Employer's insolvency, or any assignment by the Withdrawn Employer for the benefit of creditors, or the Withdrawn Employer's calling of a meeting of creditors for the purpose of offering a composition or extension to such creditors, or the Withdrawn Employer's appointment of a committee of creditors or liquidating agent, or the Withdrawn

       Employer's offer of a composition or extension to creditors;

(b) the Withdrawn Employer's failure or inability to pay its debts as they become due;

(c) the commencement of any proceedings by or against the Withdrawn Employer (with or without the Withdrawn Employer's consent) pursuant to any bankruptcy or insolvency laws or any laws relating to the relief of debtors, or the readjustment, composition or extension of indebtedness, or to the liquidation, receivership, dissolution or reorganization of debtors;

(d) the withdrawal, revocation or suspension, by any governmental or judicial entity or by any national securities exchange or association, of any charter, license, authorization, or registration required by the Withdrawn Employer in the conduct of its business; or

(e) any other event or circumstance which in the judgment of the Trustees materially impairs the Withdrawn Employer's credit worthiness or the Withdrawn Employer's ability to pay its withdrawal liability when due.

36. Based on documentation produced by Wattles during discovery in the arbitration and deposition testimony of Mr. Jacobs, the Pension Fund determined that Wattles triggered a "default" under 29 U.S.C. §1399(c)(5)(B) and Section 6 E. 2. of the Policies and Procedures of Contributing Employers since, among other reasons, Wattles does not have the financial ability and wherewithal to pay its debts, including the withdrawal liability, as they become due.

37. On October 13, 2023, the Pension Fund notified Wattles of a "default" and demanded immediate payment of the outstanding balance of the assessed withdrawal liability, in the

amount of $1,245,674.20.

38. As of the date of this action, Wattles has failed, refused and/or neglected to pay the outstanding balance of the assessed withdrawal liability as a result of the default.

39. Upon information and belief, the Pension Fund will suffer irreparable harm if the outstanding balance of the withdrawal liability is not immediately paid since there is a serious risk of a dissipation of Wattles assets that should be used to satisfy a statutory liability owed to said Fund.

**WHEREFORE,** the Pension Fund demands judgment against Wattles, and each and every member of its controlled group, in the amount of $1,245,674.20, plus interest, an additional award of the greater of interest or liquidated damages, reasonable attorneys' fees, costs and expenses, and any other relief as to this Court seems just and proper.  The Pension Fund also request declaratory and injunctive relief that all assets expended by Wattles be returned for the benefit of the Pension Fund and all assets remaining be paid to the Pension Fund to satisfy the assessed withdrawal liability.

**PARAVATI, KARL, GREEN & DEBELLA, LLP**

By: /s/ Vincent M. DeBella
Vincent M. DeBella, Esq. (101465)
Attorneys for Plaintiffs
**OFFICE & P.O. ADDRESS**
520 Seneca St., Suite 105
Utica, New York 13505
Telephone: (315) 735-6481
Fax: (315) 735-6406
E-mail: vdebella@pkgdlaw.com

Dated: January 4, 2024
Utica, New York